**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALLAN COLE,                                     :
                                                :
                        Plaintiff,              :    ECF CASE
                                                :
            v.                                  :    Civil Action No. 16-cv-07014-VSB
                                                :
BLACKWELL FULLER MUSIC PUBLISHING,              :
LLC and FIFTY-SIX HOPE ROAD MUSIC LTD.          :
                                                :
                        Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

SUMMARY OF RELEVANT FACTS ........................................................................ 3

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................. 5

I.    Plaintiff Fails to State a Timely Claim of Copyright Ownership. ..........................5

    A.   Plaintiff's Claim Accrued With the Filing of the 1974 and 1976 Copyright
       Registrations. .................................................................................................. 7

    B.   Plaintiff's Claim Accrued in the 1970s (or 1980s) With the Widespread Public
       Distribution and Exploitation of the Compositions. ......................................... 8

    C.   Plaintiff's Receipt of Royalty Statements in 2002 Put Plaintiff on Notice of His
       Ownership Claim. .......................................................................................... 10

II.   Plaintiff's Remaining Claims Are Also Time Barred, and In Any Event Fail to State
    a Claim Upon Which Relief Can Be Granted. ......................................................11

    A.   Plaintiff's Remaining Claims All Flow from Copyright Ownership, and Are
       Thus Time Barred. .........................................................................................11

    B.   Plaintiff Has No Private Right of Action For Copyright Registration or
       Cancellation. ..................................................................................................12

    C.   Plaintiff's Accounting Claim Fails as Untimely and for Lack of the Necessary
       Fiduciary Relationship. ..................................................................................13

    D.   Plaintiff Fails to Meet the Statutory Prerequisites Necessary to Bring a
       Copyright Infringement Claim. ......................................................................14

    E.   Plaintiff's Asserted Fraud on the Copyright Office is Not a Cognizable
       Affirmative Claim. ........................................................................................15

CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson News, LLC v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)...........................................................................5

*Ashcroft v. Iqbal*,
    556 U.S 662 (2009).....................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................5

*Brand v. RMM*,
    No. 10 Civ. 0287, 2011 WL 1496344 (S.D.N.Y. Apr. 18, 2011)....................8, 9, 11

*Brownstein v. Lindsay*,
    742 F.3d 55 (3d Cir. 2014)........................................................................12, 13

*Charron v. Meaux*,
    60 F.R.D. 619 (S.D.N.Y. 1973) ....................................................................14

*Cooper v. Sony Records Int'l*,
    No. 00 Civ. 233, 2001 WL 1223492 (S.D.N.Y. Oct. 15, 2001) ...........................11

*Dodson v. JRL Music, Inc.*,
    No. 16 Civ. 3087, 2017 WL 1103465 (2d Cir. Mar. 22, 2017) ...........................11

*Gallop v. Cheney*,
    642 F.3d 364 (2d Cir. 2011).........................................................................5

*Gillespie v. AST Sportswear, Inc.*,
    No. 97 Civ. 1911, 1998 WL 289681 (S.D.N.Y. June 4, 1998).............................15

*Johnson v. Sequans Commc'ns S.A.*,
    No. 11 Civ. 6341, 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013)............................3

*Kwan v. Schlein*,
    No. 05 Civ. 0459, 2008 WL 4755345 (S.D.N.Y. Oct. 30, 2008) ....................15, 16

*Lumiere v. Pathe Exch.*,
    275 F. 428 (2d Cir. 1912) ...........................................................................14

*Mahan v. Roc Nation, LLC*,
    No. 14 Civ. 5075, 2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015), *aff'd*, 634 F.
    App'x 329 (2d Cir. 2016) .........................................................................7, 9, 10

*Margo v. Weiss*,
    No. 96 Civ. 3842, 1998 WL 2558 (S.D.N.Y. Jan. 5, 1998), *aff'd*, 213 F.3d 55
    (2d Cir. 2000)..................................................................................................6, 7

*Mattel, Inc. v. Robarb's, Inc.*,
    No. 00 Civ. 4866, 2001 WL 913894 (S.D.N.Y. Aug. 14, 2001) ...........................................16

*Merchant v. Levy*,
    92 F.3d 51 (2d Cir. 1996) ................................................................................6, 7, 11

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    No. 11 Civ. 6658, 2012 WL 3886555 (S.D.N.Y. Sept. 6, 2012) ..........................................3

*Netzer v. Continuity Graphic Assocs., Inc.*,
    963 F. Supp. 1308 (S.D.N.Y. 1997)....................................................................6, 11

*Ortiz v. Guitian Bros. Music, Inc.*,
    No. 07 Civ. 3897, 2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008) ..................................5, 7, 9

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)..............................................................................14, 15

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010)........................................................................................14

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
    893 F. Supp. 285 (S.D.N.Y. 1995)........................................................................13

*Rios v. Cartagena*,
    No. 14 Civ. 7583, 2015 WL 4470433 (S.D.N.Y. July 9, 2015) .......................................13, 14

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992)................................................................................14

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..................................................................................5

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) ...............................................................................12

*Vaad L'Hafotzas Sichos, Inc. v. Krinsky*,
    133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) .................................................................12

*Varsity Brands, Inc. v. J&M Spirit Wear, Inc.*,
    No. 09 Civ. 1795, 2009 WL 3401182 (S.D.N.Y. Oct. 19, 2002) .........................................16

*Weber v. Geffen Records, Inc.*,
    63 F. Supp. 2d 458 (S.D.N.Y. 1999)........................................................................8

*Wilson v. Dynatone Publ'g Co.*,
No. 16 Civ. 104, 2017 WL 1330336 (S.D.N.Y. Apr. 10, 2017) .................................... passim

**STATUTES**

17 U.S.C. § 205(c) ...........................................................................................................7

17 U.S.C. § 408 .............................................................................................................13

17 U.S.C. § 410(c) ...........................................................................................................6

17 U.S.C. § 411(a) .........................................................................................................14

17 U.S.C. § 507(b) ......................................................................................................6, 8

**OTHER AUTHORITIES**

37 C.F.R. § 201.7(a) ......................................................................................................12

37 C.F.R. § 202 *et seq.* .................................................................................................13

5 Patry on Copyright § 17:108 (2017) ..........................................................................12

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 5

Defendants Blackwell Fuller Music Publishing, LLC ("Blackwell") and Fifty-Six Hope Road Music Ltd ("Hope Road") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss, under Fed. R. Civ. P. 12(b)(6), Plaintiff Allan Cole's First Amended Complaint (ECF 28) ("FAC").

## <u>INTRODUCTION</u>

In the early 1970s, Plaintiff allegedly co-wrote two songs, "War" and "Natty Dread," (the "Compositions") that would soon become famous through Bob Marley.  Plaintiff was intimately familiar with the songs' success, as he was Bob Marley's road manager into the 1980s, was aware that copyright registrations had been filed in 1974 and 1976, and knew that sheet music of the songs was being sold.  However, Plaintiff was not credited as an author or an owner of the Compositions in their attendant copyright registrations, and despite the songs' commercial success, Plaintiff received no royalties from their exploitation until 2002 (and even then, just public performance royalties for one of the songs).  Nevertheless, Plaintiff raised no complaint for over four decades, until filing this suit on September 15, 2016.

After decades of silence and acquiescence, Plaintiff now claims he held a copyright interest in the Compositions from the beginning, and as such is entitled to a declaration of ownership, infringement, cancellation of registrations, issuance of new registrations, and an accounting.  Those claims are meritless as a matter of law, but more fundamentally, Plaintiff's claims run far afoul of the Copyright Act's three-year statute of limitations, designed to incentivize copyright holders to pursue claims expeditiously and thus promote stability and predictability in the copyright market.  The FAC is thus barred in its entirety.

Plaintiff himself alleges multiple events that would have put him on notice of his claim long ago and started the three-year limitations clock.  One, plaintiff knew, when he allegedly co-

wrote the Compositions in the early 1970s, that he was a co-writer, yet he received no royalties for three decades.  Two, if the lack of royalties did not start the limitations clock in the early 1970's, clearly that clock started when the Compositions became wildly successful in the hands of Bob Marley (and Plaintiff still received no royalties).  Three, the Compositions were registered with the Copyright Office in 1974 and 1976 (public records) without listing Plaintiff as an author or claimant (and he received no royalties).  Four, sheet music of the Compositions was published and sold listing Plaintiff as an author but not a copyright owner (and he received no royalties).  And five, in 2002, Plaintiff received a portion of the writer's share of public performance royalties relating to one of the songs, which certainly should have raised flags if plaintiff was truly a co-owner of the Compositions.  But *fourteen* more years passed until Plaintiff filed suit seeking a declaration of copyright ownership.

If Plaintiff ever had an ownership claim, it is long expired.  Because all of Plaintiff's remaining claims rest on a declaration of ownership, the entire FAC should be dismissed.  Additionally, each of the remaining claims – for registration, cancellation, infringement, accounting, and fraud – fail to state a claim:

- Registration / Cancellation.  Claims for registration issuance or cancellation are not cognizable in federal court but belong in the first instance before the Copyright Office, which has administrative responsibility for such procedures.

- Accounting.  Plaintiff's claim for accounting fails because Plaintiff cannot (and does not) allege the required fiduciary relationship.  As a matter of law, there is no fiduciary relationship between an artist (Plaintiff) and a music publisher (Defendants).

- Infringement. There is no legal basis to bring a claim for copyright infringement, as Plaintiff does not allege any unauthorized copying, a required element.  Additionally, Plaintiff fails to fulfill the statutory prerequisite of obtaining a copyright registration.

- <u>Fraud</u>.   Fraud on the Copyright Office is not an affirmative *claim* but an affirmative *defense* available to copyright defendants to rebut the presumption that a registered copyright is valid.

In short, the window for adjudicating Plaintiff's claims to copyright ownership in the Compositions has long been shut.  Plaintiff was required to bring suit decades ago, and for good reason.  Stale ownership claims threaten to disrupt longstanding and established systems of copyright ownership, transfers, and administration.  There is no reason or excuse for Plaintiff's decades-long delay, his claims are without merit, and the FAC should be dismissed.

## SUMMARY OF RELEVANT FACTS

The facts herein are taken from the well-pleaded allegations in the FAC that are factual and not conclusory.

The relevant facts at issue occurred four decades ago, in the 1970s.  Plaintiff alleges that he co-wrote the words and music to the songs "War" and "Natty Dread," with Carlton Barnett and Rita Marley, respectively.  FAC ¶ 7.  "War" was registered with the Copyright Office in 1974, and "Natty Dread" in 1976.  *Id.*  The registrations listed Tuff Gong Music as the claimant and author of the songs as an "employer for hire."[1]  Compl., Exs. A-1 and A-2 (ECF 1-1 at 1-4);[2] *see also* FAC ¶ 8.  Neither application lists Plaintiff (or Carlton Barnett and Rita Marley) as an author.  ECF 1-1 at 1-4.  Still, Plaintiff was aware at the time that registrations were being filed.  FAC ¶¶ 8-9 (alleging that Plaintiff "was led to believe that the [Compositions] were being

---

[1] Plaintiff claims that Defendants have since acquired the publishing interests in the Compositions.  FAC ¶ 5.  Defendants had no involvement or connection to the Compositions at their creation, registration, or initial distribution in the 1970s.  *See id.*

[2] We refer to Exhibit A to the original Complaint here, as it was not filed with the FAC.  Documents referenced and relied on in the Complaint are cognizable on a motion to dismiss.  *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 2012 WL 3886555, at *6 n.7 (S.D.N.Y. Sept. 6, 2012); *see also, e.g., Johnson v. Sequans Commc'ns S.A.,* 2013 WL 214297, at *7 (S.D.N.Y. Jan. 17, 2013) (considering on a motion to dismiss "documents possessed by or known to the plaintiff[s] and upon which [they] relied in bringing the suit") (citations omitted).

copyrighted for him as an author").   Since then, the Copyright Office, Defendants, their predecessors, and indeed, the world, have relied on and operated on the provision of copyright ownership as laid out in the registrations.

From the beginning, Plaintiff took notice of the Compositions' widespread distribution and popularity.   The Compositions were "recorded by and performed and made famous by performing artist Robert Nesta 'Bob' Marley," while Plaintiff "served as road manager for Bob Marley."  FAC ¶¶ 7, 16.  During that time, "from 1973 to 1980," Plaintiff claims he "was always acknowledged as the co-author of the compositions in question."   FAC ¶ 16.   But Plaintiff received no royalties from the exploitation of the Compositions through 1980 and beyond.

Additionally, Plaintiff was aware at the time that sheet music of the Compositions "was being sold … during times, relevant to this cause of action…."  *Id.* ¶¶ 12, 17.  While the sheet music for "War" attached as Exhibit B-1 to the Complaint (ECF 1-1 at 5) states "words and music by Allen Cole and Carlton Barrett," it also provides, "Copyright © Fifty-Six Hope Road Music, Ltd. … and Blue Mountain Music, Ltd."  Similarly, the lyric and chord sheet for "Natty Dread" (Compl., Ex. B-2) listed "Alan Cole" as a co-author but not a holder of the 1974 copyright.  ECF 1-1 at 6-7.

Plaintiff did not receive any royalties relating to the Compositions until 2002, when he began receiving royalty statements issued by ASCAP, which were solely for the writer's share of public performance income from the exploitation of "Natty Dread."  FAC ¶ 21.  It was not until September 15, 2016, another 14 years later, that Plaintiff filed suit, seeking a declaration of copyright ownership, and of rights flowing from ownership: a declaration of infringement, cancellation of copyright registrations, issuance of new registrations, and an accounting.  ECF 1; *see* FAC at 5.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009).  By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed, "[s]uch conclusory statements 'are not entitled to the assumption of truth.'" *Id.* at 679.  Likewise, the requirement to draw all inferences in a plaintiff's favor is "inapplicable to legal conclusions." *Id.* at 678; *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  "[E]ven if the complaint contains sufficiently well-pleaded allegations, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (citations omitted).

A statute of limitations defense can be brought under a Rule 12(b)(6) motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citations omitted). Indeed, "timeliness is 'material when testing the sufficiency of a pleading.'" *Id.* (quoting Fed. R. Civ. P. 9(f)).

**ARGUMENT**

**I.  Plaintiff Fails to State a Timely Claim of Copyright Ownership.**

The crux of Plaintiff's Complaint is a dispute over copyright ownership, as all of the relief sought depends on establishing that he is a co-owner of the Compositions.  *See* FAC at 5; *see also Ortiz v. Guitian Bros. Music, Inc.*, 2008 WL 4449314, at * 3 (S.D.N.Y. Sept. 29, 2008) ("Where, as here, a plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is

applied."). But Plaintiff waited far too long to now assert an ownership claim. As a result, the statute of limitations bars the FAC in its entirety.

In order to "promote[] the principles of repose integral to a properly functioning copyright market," civil actions under the Copyright Act are subject to a three-year statute of limitations, which runs from the time the claim accrued. 17 U.S.C. § 507(b); *Wilson v. Dynatone Publ'g Co.*, 2017 WL 1330336, at *5 (S.D.N.Y. Apr. 10, 2017) (citing *Merchant v. Levy*, 92 F.3d 51, 57 (2d Cir. 1996)); *see also Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1318 (S.D.N.Y. 1997) ("Statutes of limitations … protect important social interests in certainty, accuracy, and repose …. This is especially true in the area of copyright, where certainty and repose are essential to the functioning of the copyright market.").[3] Participants in the copyright market are entitled to rely on statements made in copyright registrations, and on the certainty that any ownership disputes will be raised within three years. *See* 17 U.S.C. § 507(b); *id.* § 410(c) (providing that a certificate of registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"). In the end, this "serves to enrich the general public through access to creative works." *Netzer*, 963 F. Supp. at 1318 ("It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated while large amounts of money are spent developing a market for the copyrighted material.") (citations omitted).

A claim for copyright ownership accrues only once: when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Wilson*, 2017 WL 1330336, at *4

---

[3] The Compositions were copyrighted in 1974 and 1976, and are therefore technically governed by the Copyright Act of 1909, rather than the Copyright Act of 1976. However, because the time limitations of the two Acts are virtually identical, the practice of the Second Circuit is to refer only to the Copyright Act of 1976. *Merchant*, 92 F.3d at 55 n.6; *Margo v. Weiss*, 1998 WL 2558, at *5 n.4 (S.D.N.Y. Jan. 5, 1998), *aff'd*, 213 F.3d 55 (2d Cir. 2000).

(quoting *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011)).  The FAC alleges facts that render Plaintiff's claims untimely on at least three independent bases – Plaintiff's claim accrued (1) when the copyright registrations were filed in 1974 and 1976; (2) in the 1970s and 80s as the Compositions were widely distributed and performed; or, at the very latest, (3) in 2002 when Plaintiff received some of the royalties to which a co-author would be entitled.

### A.    Plaintiff's Claim Accrued With the Filing of the 1974 and 1976 Copyright Registrations.

As an initial matter, "a co-author knows that he or she jointly created a work from the moment of its creation." *Merchant*, 92 F.3d at 56.  The act of creation with no resulting royalties alone put Plaintiff on notice of his claim.  If that were not enough, the recordation of copyright registrations with the Copyright Office puts the world on notice of the facts stated in the registrations.  17 U.S.C. § 205(c) ("Recordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document.").  Accordingly, a filed copyright registration puts an alleged co-author on notice of an ownership claim.  *Mahan v. Roc Nation, LLC*, 2015 WL 1782095, at *3 (S.D.N.Y. Apr. 15, 2015) ("Plaintiff's claims are time barred as a result of … registrations with the United States Copyright Office."), *aff'd*, 634 F. App'x 329 (2d Cir. 2016) (summary order); *Ortiz*, 2008 WL 4449314, at *4 ("Defendants' act of registration should have put Ortiz on notice of his claim."); *Margo v. Weiss*, 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) (ownership claim accrued "in 1961, the year in which the song was written and the copyright certificate listing the lyricists as authors was filed"), *aff'd*, 213 F.3d 55 (2d Cir. 2000).

In *Wilson*, this court recently dismissed a nearly identical complaint on statute of limitations grounds.  There, like here, a publishing company (the defendant's predecessor-in-interest) registered a copyright in the subject composition in 1974, listing the publishing

company as the sole claimant to copyright. *Wilson*, 2017 WL 1330336, at *3. And like here, the plaintiff-artists alleged that they never executed an agreement that transferred any interest in the composition. *Id.* When the plaintiffs brought a copyright ownership claim four decades later, the court found the claim time barred, as the ownership claim arose "at least" four decades earlier at the time of registration. *Id.* at *5. The same conclusion applies here.

Here, the Compositions were registered with the Copyright Office in 1974 and in 1976, listing Defendants' alleged predecessor-in-interest as the sole claimant. Accordingly, Plaintiff was on inquiry notice *at that time* as to his copyright ownership claim. Plaintiff has no valid excuse for failure to timely assert his claim, as he alleges he was aware the registrations were being filed. FAC ¶¶ 8-9. His right to assert ownership under the Copyright Act lapsed decades ago. 17 U.S.C. § 507(b).

### B.   Plaintiff's Claim Accrued in the 1970s (or 1980s) With the Widespread Public Distribution and Exploitation of the Compositions.

Plaintiff's ownership claim accrued in the 1970s for the additional reason of the Compositions' widespread distribution and exploitation without receipt of royalties. This too puts a purported author on inquiry notice as to the existence of an ownership claim. *Brand v. RMM*, 2011 WL 1496344, at *4 (S.D.N.Y. Apr. 18, 2011) (given history of public distribution without receiving royalties, finding plaintiff "reasonably should have know[n] of the injury upon which his claim is premised …."); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 465 (S.D.N.Y. 1999) (finding on a motion to dismiss, where work was widely distributed without receipt of royalties, "a reasonably diligent person … would have looked at the … copyright registration [to see] who was credited as an author ….").

Plaintiff freely admits that the Compositions were widely distributed and exploited in the 1970s, stating that the Compositions were "made famous" by Bob Marley during that time. FAC

¶¶ 7-8.  Indeed, he was intimately aware of the songs' success as Bob Marley's road manager "from 1973 to 1980."  *See id.* ¶ 16.  During that time, he claims, he was "always acknowledged as a co-author" yet received no royalties.  *See id.*  That put Plaintiff on notice of his claim.  *See Ortiz*, 2008 WL 4449314, at *4 ("[T]he Defendants' open distribution and exploitation of the [work] without paying any royalties to Ortiz should have put Ortiz on notice that Defendants rejected his claim to copyright ….").

Additionally, Plaintiff alleges that "during times relevant to this cause of action," he has "seen sheet music of the subject compositions with his name printed on them as co-author."  FAC ¶ 17.  Indeed, the sheet music attached as Exhibits B-1 and B-2 to the original Complaint list Plaintiff as a co-author but *not* as the copyright holder.  ECF 1-1 at 5-7.  This too put him on notice of his claim and started the three-year clock.  *Wilson*, 2017 WL 1330336, at *5 (copyright notice on sound recording label in 1973, among other things, "put plaintiffs amply on notice decades ago of their claims to own those copyrights"); *Mahan*, 2015 WL 1782095 at *4 (copyright notice on an album that did not list plaintiff as a copyright holder gave plaintiff "reason to know of his alleged injury"); *Brand*, 2011 WL 1496344, at *4 (copyright notice on compact disc put plaintiff on notice of his ownership claim); *Ortiz*, 2008 WL 4449314, at *3 ("Public distribution of the work at issue bearing copyright notices in the name of the defendant(s) which exclude the plaintiff … has been held to create sufficient notice to begin the running of the statute of limitations.") (citing *Rico Records Distribs., Inc. v. Ithier*, 2005 WL 2174006, at *2 (S.D.N.Y. Sept. 8, 2005)).

The copyright notices, and the widespread distribution of the Compositions without royalties to the Plaintiff, put him on inquiry notice of his copyright claims in the 1970s, and at least by the 1980s.  Plaintiff concedes as much in claiming "Mr. Blackwell had to know that the

9

plaintiff was not in the registered in Copyright Office [sic] as a copyright owner or co-author in the compositions in question because he never paid any publishing company that was associated with the plaintiff."  FAC ¶ 29; *see also id.* ¶ 26.  If Mr. Blackwell "had to know" because of the lack of royalties to Plaintiff, so too did Plaintiff.  As such, Plaintiff's three-year period to bring a copyright ownership claim has long since lapsed.

### C.   Plaintiff's Receipt of Royalty Statements in 2002 Put Plaintiff on Notice of His Ownership Claim.

Plaintiff's claim accrued in the 1970s with the copyright registration and widespread distribution and publication of the Compositions without any royalty payment to Plaintiff.  That alone warrants dismissal of the FAC, but even if those events were insufficient to begin the limitations clock, then at the very latest, Plaintiff's claim accrued 15 years ago when he received royalty statements for the first time in relation to "Natty Dread."  FAC ¶ 21.

When an alleged co-owner learns that he is entitled to royalties that he has not received, he is on notice of his claim.  *Wilson*, 2017 WL 1330336, at *6 ("[B]y [Defendants'] not paying royalties to plaintiffs, plaintiffs were placed on inquiry as to the existence of a right.") (citations omitted); *Mahan*, 2015 WL 1782095, at *4 ("The limitations period begins to run when alleged co-owners learn they are entitled to royalties that they are not receiving.").

In 2002, for reasons unexplained in the Amended Complaint, Plaintiff began receiving certain payments for the "Natty Dread" composition through ASCAP.  FAC ¶ 21.  While a reasonably diligent co-author of the Compositions should have long known he was entitled to royalties by 2002, the belated ASCAP statements were an explicit indication that Plaintiff had

not been receiving royalties to which he believed he had been entitled for the prior thirty years.

Still, Plaintiff took no action for another near decade-and-a-half.[4]

## II.   Plaintiff's Remaining Claims Are Also Time Barred, and In Any Event Fail to State a Claim Upon Which Relief Can Be Granted.

### A.   Plaintiff's Remaining Claims All Flow from Copyright Ownership, and Are Thus Time Barred.

When an ownership claim is time-barred under the statute of limitations, all other rights

and remedies that flow from the ownership claim are also barred.  *Merchant v. Levy*, 92 F.3d 51,

56 (2d Cir. 1996) ("[P]laintiffs claiming to be co-authors are time-barred three years after accrual

of their claim from seeking a declaration of copyright co-ownership rights and any remedies that

would flow from such a declaration."); *Wilson*, 2017 WL 1330336, at *8 ("[I]nsofar as plaintiffs'

accounting claims ostensibly flow from their alleged status as co-owners of the … copyrights …,

these claims are time-barred."); *see also Brand v. RMM*, 2011 WL 1496344 (S.D.N.Y. Apr. 18,

2011) ("Most courts in this District have held that where the gravamen of a plaintiff's copyright

claim is ownership, and not infringement, the infringement claims are barred if the ownership

claim is time-barred, even if the infringing acts occurred within the last three years.") (quoting

*Tolliver v. McCants*, 2009 WL 804114, at *10 (S.D.N.Y. Mar. 25, 2009)).

Plaintiff's accounting claim is similarly untimely.  When a copyright ownership claim is

time-barred, any state-law claim for accounting is "by extension" also untimely.  *Dodson v. JRL*

---

[4] The FAC does not claim, or allege sufficient facts to claim, that the statute of limitations should be equitably tolled due to fraudulent concealment.  Any such claim would have to be plead with particularity, and limitation periods are tolled only in "extraordinary circumstances" of "egregious wrongdoing."  *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997) (rejecting fraudulent concealment claim, and holding that a five-year span after initial conversation with co-author demonstrated a failure to exercise the necessary due diligence); *see also Cooper v. Sony Records Int'l*, 2001 WL 1223492, at *3 (S.D.N.Y. Oct. 15, 2001) (granting motion to dismiss when plaintiff "merely alleged that it was not aware of its claim ….").  Plaintiff does not (and cannot) allege the necessary elements of fraudulent concealment, including an inability to discover the nature of the claim within the limitations period despite due diligence in attempting to discover the claim.  *Cooper*, 2001 WL 1223492, at *3 (merely alleging unawareness does not suffice).

*Music, Inc.*, 2017 WL 1103465, at *1 (2d Cir. Mar. 22, 2017) (summary order).  For example, in *Wilson*, this court dismissed an accounting claim for untimeliness where the court found the underlying copyright ownership claim to be time barred.  *Wilson*, 2017 WL 1330336, at *7-8. The same is true here.  Plaintiff's demand for accounting stems from his ownership claim, as there would be nothing to account for if he was not an owner.

Because a declaration of ownership is a predicate to all of Plaintiff's remaining claims – a declaration of infringement, cancellation of copyright registrations, issuance of new registrations, and an accounting – the entire FAC should be dismissed as time barred.

Still, Plaintiff's claims fail on more grounds.

**B.  Plaintiff Has No Private Right of Action For Copyright Registration or Cancellation.**

Even if Plaintiff could somehow proceed with an untimely ownership claim, there is nothing in the Copyright Act that provides a basis or authority for a private right of action seeking a new copyright registration or cancellation of an existing one.  *See Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d Cir. 2014) ("[T]here is no statutory authority in the Copyright Act that gives courts any general authority to cancel copyright registrations."); 5 Patry on Copyright § 17:108 (2017) ("[N]o private cause of action exists to cancel a registration…."); 37 C.F.R. § 201.7(a) ("Cancellation is an action taken by the Copyright Office…."); *see also Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) (same).

Instead, cancellation is done through petition to the Copyright Office.  *See* 37 C.F.R. § 201.7 (providing a cancellation procedure through the Copyright Office); *Brownstein*, 742 F.3d at 75 ("Cancellation of a copyright registration is certainly an administrative function, at least as much as issuing a registration is an administrative function."); 5 Patry on Copyright § 17:108 (2017) (same); *see also Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775,

781 (9th Cir. 2002) (cancellation of a registration must first be sought from the Copyright Office).

Registration is likewise an administrative function committed to the Copyright Office, and the Copyright Act grants no authority for a private right of action in federal court to adjudicate issuance of a new copyright registration.  *See* 17 U.S.C. § 408; 37 C.F.R. § 202 *et seq.*; *see also Brownstein*, 742 F.3d at 75-76 (noting that "registration is an administrative function").   Accordingly, dismissal of Plaintiff's claims for copyright registration and cancellation is appropriate on this additional ground.

### C.    Plaintiff's Accounting Claim Fails as Untimely and for Lack of the Necessary Fiduciary Relationship.

In addition to being untimely, Plaintiff's accounting claim fails for failure to allege a fiduciary relationship between Plaintiff and Defendants, or a breach of any fiduciary duty, as required by New York law.  *Wilson*, 2017 WL 1330336, at *7 (citing *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 383 (App. Div. 1986)).   Plaintiff cannot so-allege because, as a matter of law, there is no fiduciary relationship between a music publisher and an artist; instead, the relationship is purely one of contract.  *Id.* at *7 ("[T]here is no fiduciary relationship between a music publisher and a composer as a matter of law…."); *Rios v. Cartagena*, 2015 WL 4470433, at *7 (S.D.N.Y. July 9, 2015) ("[I]n the absence of special circumstances, no fiduciary relationship exists between a music publisher and composers as a matter of law."); *see also Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 289 (S.D.N.Y. 1995) ("an arms-length licensor/licensee type relationship, without more, is not fiduciary in nature").

Plaintiff does not allege any relationship with Defendants beyond the fact that they own publishing rights in the Compositions.  Even alleging that a party is responsible for collection and distribution of royalties is insufficient to plead a fiduciary relationship.  *Wilson*, 2017 WL

13

1330336, at *7; *Rios*, 2015 WL 4470433, at *7.   Because there is no fiduciary relationship between Plaintiff and Defendants as a matter of law, Plaintiff has no claim for accounting, even if it were not time barred.

### D.   Plaintiff Fails to Meet the Statutory Prerequisites Necessary to Bring a Copyright Infringement Claim.

Even if Plaintiff's purported claim for declaration of copyright infringement were not time barred, Plaintiff has not met the statutory prerequisite of obtaining a copyright registration or plead the elements of infringement.   "To establish an infringement of a copyright, a plaintiff must show both ownership of a copyright and that defendant copied the protected material without authorization." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992).   Plaintiff's ownership claim is time barred, and he alleges no unauthorized copying whatsoever.

Even more fundamentally, Plaintiff cannot bring an infringement action without first registering a copyright with the Copyright Office.   "No civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with" the Act.   17 U.S.C. § 411(a).[5]   Based on this statutory mandate, copyright registration is a necessary condition for filing an infringement suit. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157-58 (2010) ("[Section 411(a)] establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the [Copyright Act's] remedial provisions."); *Psihoyos v. John*

---

[5] As noted in footnote 3 *supra*, the Compositions are technically governed by the Copyright Act of 1909. Because deposit and registration with the Copyright Office were prerequisites to suit under the 1909 and 1976 Acts, Defendants refer to the current Act for convenience.   *See Lumiere v. Pathe Exch.*, 275 F. 428, 430 (2d Cir. 1912) ("Section 12 [of the Copyright Act of 1909] provides that 'no action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this act with respect to the deposit of copies and registration of such work shall have been complied with.'"); *Charron v. Meaux*, 60 F.R.D. 619, 624 (S.D.N.Y. 1973) ("Deposit and registration are clearly prerequisites to a suit for copyright infringement.   Failure to comply with the requirements of the [Copyright Act of 1909] bars suit and failure to allege compliance renders the complaint defective.") (citations omitted).

*Wiley & Sons, Inc.*, 748 F.3d 120, 125-26 (2d Cir. 2014) (copyright registration prior to bringing suit for infringement is "required by the plain terms of the statute"); *Gillespie v. AST Sportswear, Inc.*, 1998 WL 289681, at *2 (S.D.N.Y. June 4, 1998) ("[R]egistration is a prerequisite to suit alleging copyright infringement.").

In *Psihoyos*, the Second Circuit affirmed the dismissal of an infringement claim, without leave to amend, where the plaintiff failed to file applications for registration prior to bringing an infringement claim.  748 F.3d at 125.  Similarly, Plaintiff does not claim to have filed anything with the Copyright Office, let alone received a determination by the Copyright Office as to registration.  As such, Plaintiff fails to state a claim for copyright infringement.

### E.    Plaintiff's Asserted Fraud on the Copyright Office is Not a Cognizable Affirmative Claim.

To the extent that Plaintiff purports to assert fraud on the Copyright Office for failure to list Plaintiff as an author in the registrations, such a claim of course depends on a declaration of Plaintiff's ownership, and is thus time barred.  Additionally, there is no legal basis for an affirmative claim of fraud on the Copyright Office.  Plaintiff alleges that Defendants "contributed to concealing the fraud that was perpetrated on the Copyright Office when the original copyright registration was filed" and refers to the copyright registration as a "fraudulent transaction."  FAC ¶ 41, and at 5.  But fraud on the Copyright Office is not an affirmative *claim*. Rather, fraud on the Copyright Office is an affirmative *defense* available to copyright defendants to rebut the presumption that a registered copyright is valid.  *Kwan v. Schlein*, 2008 WL 4755345, at *2 (S.D.N.Y. Oct. 30, 2008) ("[T]here is no precedent supporting the use of a claim for fraud on the Copyright Office as an affirmative cause of action ….").  As such, any affirmative allegation made by Plaintiff asserting fraud on the Copyright Office fails to state a cause of action.

Even if fraud on the Copyright Office could be an affirmative claim, Plaintiff has not met the "heavy burden" of pleading fraud.  *Mattel, Inc. v. Robarb's, Inc.*, 2001 WL 913894, at *4 (S.D.N.Y. Aug. 14, 2001).  The party asserting fraud on the Copyright Office must establish "(1) that the application for copyright registration is factually inaccurate; (2) that the inaccuracies were willful or deliberate; and 3) that the Copyright Office relied on those misrepresentations." *Varsity Brands, Inc. v. J&M Spirit Wear, Inc.*, 2009 WL 3401182, at *2 (S.D.N.Y. Oct. 19, 2002).  Some courts require a fourth factor: proof that the party claiming fraud on the Copyright Office was prejudiced by the inaccurate filing.  *Kwan*, 2008 WL 4755345, at *2; *Mattel, Inc.*, 2001 WL 913894, at *4.

Plaintiff fails to bear his heavy burden because he does not plausibly allege the necessary elements.  Conclusory allegations of "wrongful[] and fraudulent[]" conduct, like Plaintiff's, do not suffice.  FAC ¶ 31 and at 5; *see also Mattel, Inc.*, 2001 WL 913894, at *4.  And Plaintiff makes no allegations as to willfulness or intent of Defendants.  As such, Plaintiff's allegations cannot support the heightened pleading standard associated with an allegation of fraud.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the First Amended Complaint as time barred and for failure to state a claim.

Dated:  June 22, 2017                           PROSKAUER ROSE LLP

                                                */s/ Sandra A. Crawshaw-Sparks*
                                                Sandra A. Crawshaw-Sparks
                                                David A. Munkittrick
                                                Russell L. Kostelak
                                                Eleven Times Square
                                                New York, NY 10036
                                                (212) 969-3000

                                                *Attorneys for Defendants*

16