```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ALLAN COLE,                                                 :
                                                            :
                              Plaintiff,                    :
                                                            :           16-CV-7014 (VSB)
              - against -                                   :
                                                            :           **OPINION & ORDER**
                                                            :
BLACKWELL FULLER MUSIC                                      :
PUBLISHING, LLC and FIFTY-SIX HOPE                          :
ROAD MUSIC LTD.,                                            :
                                                            :
                              Defendants                    :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/28/2018

Appearances:

Warren R. Hamilton
Philadelphia, PA
*Counsel for Plaintiff*

Sandra A. Crawshaw-Sparks
David A. Munkittrick
Russell L. Kostelak
Proskauer Rose LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Allan Cole ("Cole" or "Plaintiff") brings this action against Defendants Blackwell Fuller Music Publishing, LLC ("Blackwell") and Fifty-Six Hope Road Music Ltd. ("Hope Road") (collectively, "Defendants") asserting claims for copyright ownership, copyright infringement, cancellation of registrations, issuance of new registrations, an accounting, and fraud. Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I find that Plaintiff's claims are time-barred, he is not entitled to equitable tolling, and that even if he were, he has failed to state a claim as to each of his

claims, Defendants' motion to dismiss is GRANTED.

I. **Background**[1]

Plaintiff was the road manager for the famous performing artist Bob Marley from 1973 to 1980. (Am. Compl. ¶ 16.)[2] Plaintiff wrote the words and the music to the songs "War" and "Natty Dread" (the "Compositions") with Carlton Barnett and Rita Marley, respectively. (*Id.* ¶ 7.) The Compositions were recorded, performed, and made famous by Bob Marley. (*Id.*) "Natty Dread" was registered for copyright with the U.S. Copyright Office in 1974, and "War" was registered for copyright in 1976. (*Id.*) After they were copyrighted, the Compositions were commercially released for sale in the record format. (*Id.* ¶ 8.)

At the time of copyright registration, Plaintiff was led to believe that Tuff Gong Music, the publishing designee for Tuff Gong Records, was listing Plaintiff as an author on the registration for the Compositions. (*Id.*) However, without Plaintiff's knowledge, the copyright registrations actually listed Tuff Gong Music as the author and represented that the copyrights were "work for hire." (*Id.* ¶ 9; Compl. Exs. A-1, A-2.)[3] Plaintiff has never been employed by Tuff Gong Music, and there is no agreement that assigns Plaintiff's authorship rights to Tuff Gong Music. (Am. Compl. ¶¶ 5, 13.) Tuff Gong Music is a predecessor-in-interest of Defendants in this action. (*Id.* ¶ 5.) Defendants have an ownership interest in the copyrights at issue in this litigation. (*See id.* ¶¶ 5, 26.)

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint, (Doc. 28), exhibits attached to the Amended Complaint, (*id.*), and exhibits attached to the Original Complaint, (Doc. 1), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Although Plaintiff does not attach to the Amended Complaint the exhibits attached to the Original Complaint, he does refer to them in the Amended Complaint. (Am. Compl. ¶¶ 7, 9, 11, 12, 13.) Therefore, those exhibits are incorporated by reference into the Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). My references to these allegations and exhibits should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed on February 20, 2017. (Doc. 28.)

[3] "Compl." refers to Plaintiff's Original Complaint, filed on September 15, 2016. (Doc. 1.)

During the period that he served as Bob Marley's road manager from 1973 to 1980, Plaintiff was always acknowledged as the co-author of the Compositions. (*Id.* ¶ 16.) On occasion, Plaintiff saw sheet music for the Compositions with his name listed as co-author. (*Id.*) Plaintiff's Complaint attaches two examples of sheet music for "War" and "Natty Dread," which list Plaintiff as a co-author, but name other entities as the copyright owners. (Compl. Exs. B-1, B-2.) In addition, Plaintiff has been told by family members that there are articles on the internet that acknowledge him as a co-author of the Compositions. (Am. Compl. ¶ 18.)

On certain unspecified dates, Plaintiff "made numerous inquiries" to Defendants and their predecessors-in-interest with respect to the status of his copyright royalties for the Compositions. (*Id.* ¶¶ 15, 20.) On each occasion, he was told they would consider his inquiries, but did not inform Plaintiff that the Compositions were registered as a "work for hire." (*Id.* ¶ 20.) In 2002, Plaintiff began receiving royalty statements from the American Society of Composers Authors and Publishers ("ASCAP") for "Natty Dread," even though he had never joined ASCAP. (*Id.* ¶ 21.)

Plaintiff attaches to the Amended Complaint a series of emails from July 2014 through September 2015 between and among himself, Christopher Blackwell—owner of Blackwell—and individuals at ASCAP. (*Id.* ¶¶ 22–25, Ex. C.) The correspondence primarily relates to Plaintiff's attempts to understand why he had received such small amounts of royalty payments from ASCAP in relation to the Compositions, as well as other works. (*See id.* Ex. C.) Plaintiff alleges that Mr. Blackwell "had to know" that Plaintiff was not listed as an author on the copyright registration "because [Mr. Blackwell] was not paying mechanical royalties to any publishing company plaintiff was affiliated with nor [did] he suggest to [P]laintiff he should contact a publishing company." (*Id.* ¶¶ 26, 29.) Rather, Mr. Blackwell only discussed the

3

ASCAP royalty streams with Plaintiff because he knew those were the only royalties of which Plaintiff was aware. (*Id.* ¶ 27.) In addition, Plaintiff alleges that Defendants must have become aware of the fact that Plaintiff was not listed as an author on the copyright registrations when Defendants acquired their respective publishing interests in the Compositions. (*Id.* ¶ 30.)

In May 2016, Plaintiff decided to assign half of his interest in "War" to the family of Emperor Haile Selassie of Ethiopia. (*Id.* ¶ 10.) Only after retaining legal counsel to assist him in preparing the copyright assignment did Plaintiff learn that he was not listed as an owner or author on the copyright registrations. (*Id.* ¶ 11.)

## II. **Procedural History**

Plaintiff filed his Complaint and accompanying exhibits on September 15, 2016, bringing claims against UMG Recordings, Inc., Island Records, Inc., and Tuff Gong Music. (Doc. 1.) On January 19, 2017, I held a pre-motion conference to discuss UMG Recordings, Inc.'s anticipated motion to dismiss, or in the alternative, motion for summary judgment. (*See* Docs. 22, 25, 26.) At the pre-motion conference, counsel for Plaintiff sought leave to amend the complaint to substitute parties and add factual allegations, which I granted at the conference. (Doc. 26.) On February 20, 2017, Plaintiff filed his Amended Complaint, with attached exhibits, naming Defendants Blackwell and Hope Road. (Doc. 28.)

The parties proposed a briefing schedule for Defendants' anticipated motion to dismiss the Amended Complaint on May 23, 2017. (Doc. 48.) I approved the parties' briefing schedule on May 24, 2017, (Doc. 49), and Defendants filed their motion to dismiss, (Doc. 50), a memorandum of law in support, (Doc. 51), and the declaration of David A. Munkittrick, (Doc. 52), on June 22, 2017. Plaintiff filed his opposition on July 20, 2017, (Doc. 55), and Defendants filed their Reply on August 10, 2017, (Doc. 56).

4

## III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* Finally, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 152 (internal quotation marks omitted).

## IV. Discussion

Defendants move to dismiss Plaintiff's claims on the grounds that they are time-barred, and, in the alternative, that Plaintiff fails to state a claim as to each of his claims. (*See* Defs.' Mem. 5–16; Defs.' Reply 2–10.)[4] Plaintiff counters that his failure to file his claims in a timely manner should be excused under the doctrine of equitable tolling, and that his claims accrued when he first became aware that the copyrights were not registered in his name in May 2016, but he does not respond to Defendants' arguments that the Amended Complaint fails to state a claim. (Pl.'s Opp. 4–10.)[5]

### A. *Statute of Limitations*[6]

#### 1. Applicable Law

When copyright ownership is at the center of the dispute between the parties, the relevant statute of limitations inquiry relates to the claim of ownership. *Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) ("Where . . . a plaintiff's copyright ownership is not conceded . . . copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied."); *Minder Music Ltd. v. Mellow Smoke Music Co.*, No. 98 Civ. 4496(AGS), 1999 WL 820575, at *2 (S.D.N.Y. Oct. 14, 1999) ("Although plaintiff attempts to portray its claim as one for an ongoing infringement, it has been established that the statute of limitations cannot be defeated by

---

[4] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on June 22, 2017. (Doc. 51.) "Defs.' Reply" refers to the Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, filed on August 10, 2017. (Doc. 56.)

[5] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed on July 20, 2017. (Doc. 55.)

[6] Although a statute of limitations defense is an affirmative defense that a defendant must plead, Fed. R. Civ. P. 8(c)(1), a defendant may raise it in a pre-answer motion to dismiss under Rule 12(b)(6) when "the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

portraying an action as one for infringement when copyright ownership rights are the true matter at issue."); *see also Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989) (holding that "an action for infringement between joint owners will not lie because an individual cannot infringe his own copyright").

The statute of limitations for claims brought under the Copyright Act is three years from the date on which the claim accrued. 17 U.S.C. § 507(b). A claim for copyright ownership accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); *Ortiz*, 2008 WL 4449314, at *3. "An ownership claim accrues only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (internal quotation marks omitted). "[A]ny number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." *Id.* A claim can also accrue "when alleged co-owners learn they are entitled to royalties that they are not receiving." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013).

In certain "extraordinary circumstances," a court may excuse a plaintiff's failure to comply with the applicable statute of limitations under the doctrines of equitable estoppel or equitable tolling. *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997). Equitable estoppel may apply where the plaintiff knew of his cause of action, but misconduct on the part of the defendant caused him to delay in bringing suit. *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). To invoke the doctrine, "a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to

7

his detriment." *Id.* The defendant's misconduct must amount to "egregious wrongdoing." *Netzer*, 963 F. Supp. at 1316.

"Under the equitable tolling doctrine . . . a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action." *Id.*; *see Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985) ("The essence of the doctrine is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action." (internal quotation marks omitted)). The doctrine permits the tolling of the limitations period until "the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Cerbone*, 768 F.2d at 48 (citation omitted). A plaintiff's lack of diligence is detrimental to his reliance on either doctrine. *Netzer*, 963 F. Supp. at 1316.

A plaintiff may invoke either doctrine under a theory of fraudulent concealment. *Id.* ("Fraudulent concealment on the part of the defendant is one ground for invoking equitable estoppel."); *Cooper v. Sony Records Int'l, a Div. of Sony Music Entm't, Inc.*, No. 00 CIV. 233(RMB), 2001 WL 1223492, at *3 (S.D.N.Y. Oct. 15, 2001) (holding that plaintiff may invoke doctrine of equitable tolling by fraudulent concealment). A plaintiff relying on the doctrine of equitable tolling by fraudulent concealment must plead three elements: "(1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 183 (S.D.N.Y. 2000) (citing *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)). In addition, a plaintiff must "allege facts which give rise to a strong

8

inference" of the defendant's fraudulent intent. *Cooper*, 2001 WL 1223492, at *3. A plaintiff's allegations with respect to fraudulent concealment are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Id.*; *see also* Fed. R. Civ. P. 9(b).

### 2. Application

Although Plaintiff frames his claim as one of copyright infringement, Defendants do not concede Plaintiff's copyright ownership. (Defs.' Mem. 5–6.) Since Defendants do not concede that Plaintiff is owner of copyrights with regard to "Natty Dread" and "War," the relevant statute of limitations inquiry relates to the claim of ownership. *See Ortiz*, 2008 WL 4449314, at *3; *Minder Music*, 1999 WL 820575, at *2.

#### a. Date of Accrual

Defendants argue that Plaintiff's ownership claims accrued at one of the following: (1) in 1974 and 1976, when the copyright registrations for "Natty Dread" and "War" were filed with the Copyright Office, respectively, (Defs.' Mem. 7–8); (2) in the 1970s or 1980s, when Plaintiff failed to receive royalties with respect to the Compositions, despite their widespread distribution and exploitation, (*id.* at 8–10); or, at the latest, (3) in 2002, when Plaintiff first received royalty statements with respect to "Natty Dread," (*id.* at 10–11). I find that Plaintiff was on notice of his claims at least as of the time he failed to receive royalties, despite the widespread distribution and exploitation of the Compositions, which results in his claims being time-barred.

Plaintiff alleges that the copyrights were registered with the Copyright Office in 1974 and 1976. (Am. Compl. ¶¶ 7–8.) The registrations identified the names of the Compositions as "Natty Dread" and "War," and they identified the owners and authors as Tuff Gong Music, Defendants' alleged predecessor-in-interest. (Compl. Exs. A-1, A-2.) Plaintiff was not listed as an owner or author on either registration. (*Id.*)

While copyright registration, on its own, is "not an effective repudiation" sufficient to provide "reasonable notice" to a copyright ownership claimant, *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018), when considered together with Plaintiff's failure to receive royalties, despite the widespread distribution and exploitation of the Compositions, Plaintiff was on notice of his claims at least as of the 1970s or 1980s. The Compositions were commercially released following registration of the copyrights, (Am. Compl. ¶ 8), and they were performed and made famous by Bob Marley during that time, (*id.* ¶ 7). Plaintiff was Bob Marley's road manager between 1973 and 1980, "during which time, [Plaintiff] was always acknowledged as the co-author of the [C]ompositions." (*Id.* ¶ 16). This indicates that he had actual knowledge of the commercial exploitation of the Compositions, or, at a minimum, raises the reasonable inference that Plaintiff knew of the commercial exploitation of the Compositions.[7] In addition, Plaintiff "has on occasion seen sheet music of the subject compositions," (*id.* ¶ 17), including documents he attached as exhibits to his Complaint, which clearly indicate that he is not a copyright owner, (Compl. Exs. B-1, B-2). Plaintiff received no royalties until 2002, when he began receiving royalty statements from ASCAP for the writer's share of public performance income from the exploitation of "Natty Dread." (*See* Am. Compl. ¶¶ 21, 27–28.) The fact that Plaintiff was not receiving royalties, despite the public distribution and exploitation of the Compositions in the 1970s and 1980s (and presumably in the decades since, leading up to the present), of which Plaintiff was aware, put him on notice of his claims. *Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 LGS, 2015 WL 1782095, at *4 (S.D.N.Y. Apr. 15, 2015) (holding that "the absence of any royalties sent to Plaintiff . . . gave him reason to know of his injury" where

---

[7] Plaintiff concedes in his Opposition that he "was aware of the wide distribution and exploitation of the compositions." (Pl.'s Opp. 8.) This is not surprising since, as Bob Marley's road manager from 1973 to 1980, Plaintiff no doubt traveled with Marley and witnessed him perform the Compositions.

the works were a commercial success), *aff'd*, 634 F. App'x 329 (2d Cir. 2016); *Ortiz*, 2008 WL 4449314, at *3–4 (holding that "[p]ublic distribution of the work at issue bearing copyright notices . . . which exclude the plaintiff . . . create[s] sufficient notice to begin the running of the statute of limitations" and that "Defendants' open distribution and exploitation of the [work] without paying any royalties to [plaintiff] should have put [plaintiff] on notice that Defendants rejected [plaintiff's] claim to copyright"); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) (holding that "non-payment of royalties should have put [plaintiff] on notice of" repudiation of plaintiff's ownership rights).[8]

At the latest, the limitations period with respect to "Natty Dread" began when Plaintiff received royalty statements from ASCAP in 2002 with respect to that work. Plaintiff never joined ASCAP, (Am. Compl. ¶ 21), and he states that he did not know why he began receiving royalty statements from them, (Pl.'s Opp. 10). This put Plaintiff on notice that he might be entitled to royalties for the nearly three decades preceding his initial receipt of payments in 2002 for Natty Dread.[9] *See Mahan*, 2015 WL 1782095, at *4 ("The limitations period begins to run when 'alleged co-owners learn they are entitled to royalties that they are not receiving.'" (quoting *Gary Friedrich*, 716 F.3d at 317)). There are no allegations that detract from this

---

[8] Plaintiff alleges that he "made numerous inquiries to various representatives of [Defendants] concerning royalty statements and payments for the subject compositions." (Am. Compl. ¶ 20.) While Plaintiff does not specify when these inquiries occurred, his Opposition suggests they might have occurred at or around the time he received the ASCAP royalty statements in 2002. (Pl.'s Opp. 10 (stating that Plaintiff felt "that he was finally making some progress" after receiving the statements and that he "was assured by Defendant Blackwell that he would continue to work towards a resolution of the matter").) Plaintiff essentially argues that he got the proverbial "run around" when he made such inquiries but he apparently took no additional steps to ferret out the truth. In addition, if Plaintiff made such inquiries at any point prior to three years before the commencement of this action—a reasonable inference to make in light of the circumstances—they would provide further support for the conclusion that Plaintiff was on notice of his claims.

[9] Defendants do not cite any cases holding that knowledge of an ownership claim for one work may trigger the statute of limitations for an ownership claim in another work. Nevertheless, without holding that Plaintiff's receipt of royalty payments for Natty Dread in 2002 triggered the statute of limitation for Plaintiff's ownership claim in War, it is plausible that Plaintiff was put on notice that he was not receiving all the royalty payments to which he was entitled when he began receiving royalty payments for Natty Dread.

finding, or that might explain why Plaintiff did not look-up and check the registrations himself.

Because Plaintiff's claims accrued at the earliest during the 1970s after the copyrights for the Compositions were publicly registered and while they were being publicly distributed and exploited, and at the latest in 2002, when Plaintiff began receiving royalty statements for "Natty Dread," Plaintiff's copyright ownership claims are time-barred. In addition, because Plaintiff's ownership claims are the basis for his remaining claims—copyright infringement, cancellation of copyright registrations, issuance of new registrations, and an accounting—those claims are also time-barred. *Merchant*, 92 F.3d at 56 (holding that "plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such declaration"); *Kwan*, 634 F.3d at 230 ("Where, as here, the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail."); *Dodson v. JRL Music, Inc.*, 684 F. App'x 7, 8 (2d Cir. 2017) (summary order), *cert. denied*, 138 S. Ct. 170, 199 L. Ed. 2d 41 (2017) (holding that, where plaintiff's ownership claim was untimely, her state law claims for, among other things, an accounting, were also untimely).

b. Equitable Tolling

Plaintiff does not appear to contest that his claims accrued long before he commenced this action. Rather, he argues that the doctrines of equitable tolling and/or equitable estoppel apply to render his claims timely. It is not clear, based on Plaintiff's opposition, which doctrine Plaintiff argues should apply at which times during the relevant period. However, the Amended Complaint alleges that Plaintiff believed he held a copyright in the Compositions at least until May 2016 when he attempted to assign his rights, (Am. Compl. ¶ 10), implying that he was ignorant of his claim until that time. As such, I interpret Plaintiff's argument as one in support of

12

equitable tolling rather than equitable estoppel. *Cerbone*, 768 F.2d at 49–50 (holding that "equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action," whereas equitable tolling "is invoked in cases where the plaintiff is ignorant of his cause of action").

As an initial matter, Plaintiff was aware that the copyrights were being registered in 1974 and 1976. (Am. Compl. ¶¶ 7–8.) Plaintiff alleges that although he was aware the copyrights were being registered, he "was led to believe that the [C]ompositions were being copyrighted for him as an author by . . . Tuff Gong Music," (Am. Compl. ¶ 8), but in fact, the copyright registrations listed Tuff Gong Music as the author and represented that the copyrights were "work[s] for hire," (*id.* ¶ 9; Compl. Exs. A-1, A-2). These allegations are pled with particularity and are thus sufficient to meet the first element of fraudulent concealment, the wrongful concealment by defendant.

However, Plaintiff fails to satisfy the second element—concealment which prevented his discovery of the nature of the claim within the limitations period—and the third element—his due diligence in pursuing discovery of the claims. The initial misrepresentation regarding the copyright registrations did not plausibly "prevent[] the plaintiff's discovery of the nature of the claim within the limitations period." *Antonios A. Alevizopoulos & Assocs., Inc.*, 100 F. Supp. 2d at 183. Plaintiff fails to allege any misrepresentations during the 1970s, 1980s, 1990s, or 2000s—a period in which Plaintiff witnessed the performance of the Compositions and was aware of the commercial distribution and exploitation of the Compositions—that would have prevented him from looking up the registrations himself and discovering his claims. *See Netzer*, 963 F. Supp. at 1317 ("The running of a limitations period will be tolled only so long as the condition giving rise to the tolling persists.") Plaintiff also fails to make specific allegations

13

describing his due diligence during that period. He alleges that he "made numerous inquiries to various representatives of [D]efendant[s] . . . concerning royalty statements and payments," (Am. Compl. ¶ 20), but he does not allege when he made those inquiries, or how many inquiries he made. When Defendants responded to Plaintiff stating that they "would consider" his inquiries, (*id.*), Plaintiff does not allege that he asked to review the registration documents or inquired who was identified as the author on those documents, *Price v. Fox Entm't Grp., Inc.*, 473 F. Supp. 2d 446, 459 (S.D.N.Y. 2007) (finding plaintiff failed to meet due diligence prong when he failed to establish that he asked to review registration documents). Plaintiff does attach several emails to his Amended Complaint between him and Mr. Blackwell from 2014 and 2015, but even if those were sufficient to establish additional misrepresentations and/or Plaintiff's due diligence, they were exchanged approximately forty years after the copyrights were registered.

Plaintiff contends that even though he knew of the widespread distribution and exploitation of the Compositions, he believed that his rights were protected, that he would be "treated fairly," and that "he would eventually be paid as a co-author." (Pl.'s Opp. 8.) He further argues that although he "did not know exactly how he would be paid for his work," he "believed that he would be paid because he could see . . . his name was associated as co-author of 'War' and 'Natty Dread.' He did not believe he had to do anything other than make his request to be paid to the owner of the record/publishing company."[10] (*Id.*) These facts are plainly insufficient to demonstrate due diligence. *See Price*, 473 F. Supp. 2d at 459 (holding that plaintiff's assertion that he "trusted" co-author to protect his rights was insufficient to establish equitable tolling). Therefore, I decline to equitably toll the statute of limitations on Plaintiff's

---

[10] Apart from allegations that he occasionally saw his name printed as a co-author of the Compositions on sheet music, articles, and the internet, (Am. Compl. ¶¶ 17–19), Plaintiff raises these facts for the first time in his Opposition.

14

claims and conclude that they are time-barred.

### B. *Failure to State a Claim*

Defendants argue that even if I were to find that Plaintiff's claims were timely, I should still dismiss them for failure to state a claim. (Defs.' Mem. 12–16.) Plaintiff fails to address any of Defendants' arguments on these grounds in his Opposition brief. Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument. *See, e.g.*, *AT&T Corp. v. Syniverse Techs., Inc.*, No. 12 Civ. 1812(NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014) (holding that the plaintiff's failure to address an issue in its opposition brief "concedes the point"); *W. Bulk Carriers KS v. Centauri Shipping Ltd.*, No. 11 Civ. 5952(RJS), 2013 WL 1385212, at *3 (S.D.N.Y. Mar. 11, 2013) (holding that plaintiff conceded issue of subject matter jurisdiction by failing to address it in its opposition brief); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (holding that plaintiff conceded issue through silence in opposition brief), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). As such, Plaintiff's silence in his opposition concedes Defendants' arguments concerning the Amended Complaint's failure to state a claim, and Plaintiff's claims are thus dismissed for that additional reason. *See AT&T Corp.*, 2014 WL 4412392, at *7 (concluding that plaintiff's "silence [in its opposition] concedes the point").

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 50), is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: September 28, 2018
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge